IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY, | § § § | |
| Plaintiff, | § § | |
| v. | § § | C.A. No. 3:22-cv-00150 |
| MARK A. JABOR, M.D. and RICHARD D. REYNOLDS, M.D., | § § § | |
| Defendants. | § § | |

## COMPLAINT

Plaintiff Metropolitan Life Insurance Company ("MetLife") complains of Defendants Mark A. Jabor, M.D. ("Jabor") and Richard D. Reynolds, M.D. ("Reynolds") and states:

## PARTIES

1. **MetLife.** MetLife is a New York insurance corporation with its principal office and place of business located in New York, New York.

2. **Jabor.** Jabor is a citizen of Texas who may be served with process at his residence address, 5375 Montoya Drive, El Paso, Texas 79932, or wherever he may be found.

3. **Reynolds.** Reynolds is a citizen of Texas who may be served with process at his residence address, 5664 N. Mesa, El Paso, Texas 79912, or wherever he may be found.

## JURISDICTION AND VENUE

4. **Jurisdiction.** The Court has original jurisdiction of this civil action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and there is complete diversity of citizenship between MetLife

and Jabor and Reynolds (collectively, "Defendants"). In that regard, MetLife is a citizen of New York, and Defendants are citizens of Texas.

5. **Venue.** Venue is proper pursuant to 28 U.S.C. § 1391(b)(1), as Defendants reside in this division and district and a substantial part of the events or omissions giving rise to MetLife's claims occurred here.

## OPERATIVE FACTS

6. **The First Application.** In March 2015, Jabor began the process of applying to MetLife for a disability buy-sell insurance policy and a business overhead expense policy. On March 9, 2015, Jabor signed the Application for Individual Disability Income Insurance, which included the Individual Disability Health Questionnaire Supplement and the Disability Buy-Sell Supplement, and the Disability Business Overhead Expense Supplement Application (collectively, the "First Application"). Jabor signed the First Application beneath the following provisions:

> I have read this application and any supplemental applications (collectively, "Applications") and I agree that, to the best of my knowledge and belief: (a) all statements and answers are true and complete; and (b) all of the information is correctly recorded in the Applications. I further agree that such statements and answers may be relied on by Metropolitan Life Insurance Company (MetLife) in order to determine if a policy may be issued.
>
> I understand that the Applications seek full disclosure of the information sought; and that no one but the President, the Secretary or a Vice-president of MetLife may change or waive any terms of the Applications. No agent, financial services representative or medical examiner has the authority to determine insurability or to make or modify any contract of insurance or waive any MetLife requirements.
>
> \*\*\*
>
> I understand that the Applications, any paramedical examination form, and any amendments or exclusion riders will become a part of any policy(ies) issued as a result of the Applications.
>
> \*\*\*

**COMPLAINT** - Page 2

> **Any person who, knowingly and with intent to defraud any insurance company or other person files an application for insurance with materially false information or conceals for the purpose of misleading information concerning any fact material thereto may be guilty of committing a fraudulent insurance act.**

(Bold in original.)

7. On April 20, 2015, Jabor completed Part II of the First Application, which was the Paramedical/Medical Exam (the "Paramedical Examination Form"). Jabor signed the Paramedical Examination Form beneath the following statement:

> I have read the answers to questions 2-14 before signing. They correctly reflect the answers given by me, and are true and complete to the best of my knowledge and belief. There are no exceptions to any such answers other than as written.

8. On May 22, 2015, Jabor signed the Application Amendment, in which he amended his answers to two of the non-medical questions on the First Application and certified:

> This application amendment is part of the application referred to above and is subject to the agreements in that application. The application and this amendment are part of the policy/contract to which they are attached.
>
> To the best of my knowledge and belief, the statements and answers in the application as amended by this form are true and complete as of the date this form is signed. There are no facts or circumstances which would require a change in the answers in the application, except as shown above.

9. **MetLife issues the BOE Policy and the Buy-Sell Policy.** Relying on the accuracy of the information provided by Jabor, effective June 1, 2015, MetLife issued both its Business Overhead Expense Policy No. 6680735 AH (the "BOE Policy"), which was owned by Jabor and included a $50,000.00 Maximum Covered Monthly Expense Benefit, a 30-day Elimination Period, and a 12-month Maximum Benefit Period, and its Disability Buy-Sell Insurance Policy No. 6680950 AH (the "Buy-Sell Policy"), which was owned by Reynolds and had a $1 million Maximum Buy-Out Benefit and a 365-day Elimination Period. MetLife delivered the originals of the BOE Policy and the Buy-Sell Policy, with copies of (among other

documents) the First Application and the Paramedical Examination Form attached, to Defendants. The first page of both the BOE Policy and the Buy-Sell Policy stated MetLife had issued each policy in consideration of the statements made in the First Application and the Paramedical Examination Form, which were both part of such policy, and that the owner should read the policy and could return it within 10 days if dissatisfied. Defendants never contacted MetLife to advise of any errors in either the First Application or the Paramedical Examination Form.

10. **The Second Application.** In June 2015, Jabor began the process of applying to MetLife for an individual disability income policy. On June 24, 2015, Jabor signed the Application for Individual Disability Income Insurance (the "Second Application"), which contained the same provisions above his signature as did the First Application. MetLife utilized the Paramedical Examination Form from April 2015 in evaluating Jabor's request for individual disability coverage. In August 2015, Jabor also signed the Application Amendment, in which he amended his answers to some of the non-medical questions on the Second Application and made the same certifications he had made on the Application Amendment he signed in May 2015.

11. **MetLife issues the DI Policy.** Relying on the accuracy of the information provided by Jabor, effective August 15, 2015, MetLife issued its Disability Income Insurance Policy No. 6684664 AH (the "DI Policy"), which was owned by Jabor and included a $2,000.00 Monthly Benefit for Total Disability, a 90-day Elimination Period, a Regular Occupation Period to Age 67, and riders for Residual Disability, COLA, Presumptive Disability, and the Capital Sum Benefit. MetLife delivered the original of the DI Policy, with copies of (among other documents) the Second Application and the Paramedical Examination Form attached, to Jabor. The first page of the DI Policy stated MetLife issued such policy in consideration of the

statements made in the Second Application and the Paramedical Examination Form, which were both part of such policy, and that the owner should read the policy and could return it within 10 days if dissatisfied. Jabor never contacted MetLife to advise of any errors in either the Second Application or the Paramedical Examination Form.

12.   **The claim.**   On October 21, 2021, Jabor's wife called MetLife and indicated he planned to submit a claim based on his inability to work as a Board Certified ENT and plastic surgeon since September 20, 2021. In a telephone call on February 18, 2022, Jabor stated he had returned to work full-time effective February 9, 2022, was claiming Total Disability for the period from September 21, 2021, through January 2, 2022, was claiming Residual Disability during the period from January 3, 2022, through February 8, 2022, and was not seeking benefits under the Buy-Sell Policy.

13.   **MetLife learns of Jabor's misstatements.**   During its investigation, MetLife obtained records on Jabor from some of his medical providers, and those records revealed he had made numerous misrepresentations in the First Application, the Second Application, and the Paramedical Examination Form (collectively, the "Application Documents") regarding his medical condition.[1] MetLife determined that Jabor had, in failing to truthfully and completely answer MetLife's questions in the Application Documents, made fraudulent misrepresentations that were material to the underwriting risk and were relied upon by MetLife in issuing the BOE Policy, the Buy-Sell Policy, and the DI Policy (collectively, the "Policies"). Had MetLife known of Jabor's true health history, it would not have issued the Policies.

14.   **MetLife rescinds the Policies.**   By letter dated March 14, 2022, MetLife gave

---

[1] Pursuant to federal privacy laws and the Federal Rules of Civil Procedure, MetLife will provide the exact nature of the misrepresented health conditions either upon Jabor's consent or by order of the Court. MetLife detailed these misrepresentations in multiple letters to Jabor and gave him the opportunity, prior to the filing of this action, to explain his failure to tell the truth in the Application Documents.

notice to Jabor it would not be bound by the Policies. Then, by letter dated March 16, 2022, MetLife gave notice to Reynolds it would not be bound by the Buy-Sell Policy. MetLife also provided Jabor and Reynolds with checks, which they have not yet cashed, for the premiums (with interest) that were paid for the Policies.

## CAUSES OF ACTION

15. **Rescission.** For the reasons set forth above, MetLife requests the Court to rescind and cancel the Policies and find that they were null and void as of the dates of their issuance.

16. **Declaratory judgment.** Alternatively, if it is judicially determined the Policies are not rescinded, then MetLife states there is an actual justiciable controversy between the parties and requests the Court to adjudicate, pursuant to 28 U.S.C. § 2201, that the Jabor's claims for benefits under the Policies are not payable for one or more of the following reasons:

   a. **Rescission.** That Jabor made fraudulent, material misrepresentations during the application process for the Policies, which are rescinded as of their effective dates.

   b. **Good health.** That the Policies never became effective because, at the time they were delivered and the first premiums were paid, Jabor's health was not the same as given in the Application Documents.

   c. **Continuing investigation.** That MetLife can supplement its determinations with the additional information of which it learns through its ongoing investigation.

## PRAYER

17. **Relief requested.** MetLife respectfully requests the following relief:

   (a) That Defendants be served with the Complaint and Summons and required to answer in the time and manner prescribed by law;

   (b) That the Court adjudicate that the Policies are cancelled and rescinded and are of no force or effect or, in the alternative, award MetLife the declaratory relief requested above;

   (c) That MetLife have and recover its attorney's fees and court costs; and

  (d)  That MetLife have all such other and further relief, both general and special, at law and in equity, to which it may show itself justly entitled.

          Respectfully submitted,

          By: /s/ Andrew C. Whitaker
             Andrew C. Whitaker
             State Bar No. 21273600
             andrew.whitaker@figdav.com

FIGARI + DAVENPORT, LLP
901 Main Street, Suite 3400
Dallas, Texas 75202
(214) 939-2000
(214) 939-2090 (telecopy)

ATTORNEY FOR PLAINTIFF
METROPOLITAN LIFE
INSURANCE COMPANY

**COMPLAINT** - **Page 7**